UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL J. HOLBROOKE,

                Petitioner,

v.                                                CASE NO. 07-10119
                                                HONORABLE GERALD E. ROSEN

KENNETH ROMANOWSKI,

                Respondent.
_____/

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION,
DENYING A CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Michael J. Holbrooke has filed a *pro se* application for the writ of habeas corpus pursuant to 28 U.S.C. § 2254. The habeas petition challenges Petitioner's state convictions for arson of a dwelling house and second-degree home invasion. Respondent Kenneth Romanowski urges the Court through counsel to deny the habeas petition. The Court agrees with Respondent that Petitioner's claims do not warrant granting the writ of habeas corpus. Consequently, the habeas petition will be denied.

**I. Background**

Petitioner was charged in Monroe County, Michigan with arson of a dwelling house, Mich. Comp. Laws § 750.72, and second-degree home invasion, Mich. Comp. Laws § 750.110a(3). The charges arose from a home invasion and fire at a residence in Erie Township, Michigan. The evidence adduced at trial has been summarized by the state court as follows:

> On October 19, 2002, Bessie Grodi left her home at approximately 5:30 p.m. She locked the doors to her house. Her purse, which she had left inside the entryway, could be observed from the front door. When Grodi returned home

between 6:15 and 6:30 p.m., she observed a green car speeding quickly out of her yard. The back door of her home had been smashed open and the fire alarm was sounding. The house had been ransacked. Separate fires, which were later determined to have been deliberately set, were burning in the bathroom and in a closet near the kitchen. Grodi was unable to call the fire department because the kitchen telephone was missing. A gray and tan safe, which had been in the closet near the kitchen, had been stolen from the home.

Grodi's neighbors, William and Susan Orth, observed a 1996 green Ford Contour parked very close to Grodi's house on the day the house was broken into and the fires were set. The car had visible damage to its right side and was missing its right rear window. Its trunk was open and an object, which looked like a tan cooler, was inside. Two men were observed near the vehicle. After driving past Grodi's house, the Orths turned around and went back to talk to the men. Before they could do so, however, the green Contour sped out of the driveway. William followed the car, which had Ohio bicentennial license plates. After a short distance, he and Susan decided to abandon their chase and return to Grodi's house. When they returned, they noticed that the house was on fire. Grodi was inside, and William tried to help her extinguish the bathroom blaze. When the smoke became too heavy, they left the home.

James Connors, who was charged with burglary and arson related to the incident, testified that he knew defendant from a crack house located at 652 Sylvania Avenue in Toledo, Ohio. Defendant, Gregory Herfurt, and Danette Salazar lived at the home. On October 19, 2002, while Herfurt was in jail, Connors partied with defendant and Salazar. When the group ran out of money for crack cocaine, Connors and defendant took Herfurt's car and went to find more money. Connors testified that defendant wanted to go to Michigan to steal tools from a work truck. Defendant told Connors, who was driving, to pull off at a particular exit. Connors did so. He then pulled into the first driveway near the expressway. He and defendant exited the vehicle and looked into the house. They then backed the car up the driveway, maneuvering it as close to the back of the garage as possible. Thereafter, defendant entered the house while Connors waited outside. Approximately 15 minutes later, defendant rolled a large safe to the back door. Connors assisted defendant in putting the safe into the trunk of the car. Defendant also stole approximately $200 and a jewelry box from the home. Defendant told Connors that he lit the house on fire because his fingerprints were all over the place.

Herfurt testified that he owned a 1996 Ford Contour with Ohio license plates. The car had right-side damage, and the rear passenger window was broken. After he was released from jail, the police came to 652 Sylvania Avenue and confiscated Herfurt's car. When Herfurt confronted defendant about his car, defendant made statements like the "jig" was up or "it's over." Herfurt

subsequently decided to speak with the police and consented to a search of 652 Sylvania Avenue. He told the police that the safe was in the basement and that a bag containing Grodi's papers was in a drop ceiling in the kitchen.

*People v. Holbrooke*, No. 256368 (Mich. Ct. App. Apr. 25, 2006).

Petitioner did not testify or present any witnesses. His defense was that the prosecution had not proved its case, because neither the victim, nor her neighbors, could identify Petitioner, and the witnesses who implicated him in the crime (James Connors and Gregory Herfurt) were not credible.[1]

On August 26, 2003, a Monroe County Circuit Court jury found Petitioner guilty, as charged, of arson of a dwelling house and second-degree home invasion. Petitioner was sentenced to imprisonment for twenty to forty years for the arson and to a concurrent term of nine to forty years for the home invasion. The Michigan Court of Appeals affirmed Petitioner's convictions in an unpublished order, *see id*., and on October 31, 2006, the Michigan Supreme Court denied leave to appeal. *See People v. Holbrooke*, 477 Mich. 910; 722 N.W.2d 854 (2006) (table).

Petitioner filed his habeas corpus petition on January 8, 2007. His claims read:

I. Defendant was denied a fair trial when the prosecutor injected evidence that he had previously been in prison. US CONST AM XIV; MICH CONST ART 1 SEC 17.

II. Defendant was denied equal protection and due process of law by the trial court's refusal to grant funds for an investigator. US CONST AM VI, XIV; CONST 1963, ART 1 §§ 15, 20.

---

[1] Connors admitted that he was a compulsive liar, gambler, and thief (Tr. Aug. 25, 2003, at 197), and he made a favorable deal with the prosecution in exchange for his testimony. Herfurt had a history of felony convictions for receiving stolen property, grand theft, and breaking and entering, and he hoped to win a reward for divulging information about Petitioner's case. (*Id*. at 217-21.)

    III.    Defendant was denied his right against self-incrimination by the introduction of his statement obtained in violation of *Miranda*. US CONST AM V, XIV; MICH CONST ART 1 §§ SEC 17, 20.

    IV.    The search of Defendant's domicile violated the Fourth Amendment; the third-party consent to search was not valid and the trial court erred in denying the motion to suppress. US CONST IV; MICH CONST ART 1 SEC. 11.

    V.    The trial court erred as a matter of law by denying the motion to quash as the evidence was insufficient to bind Defendant over on the charges of second-degree home invasion and arson.

    VI.    The prosecutor failed to exercise due diligence to produce an endorsed witness, and the trial court denied Defendant a fair trial by denying his request for an adverse witness instruction.

    VII.    Defendant was denied his right to a properly instructed jury and his right to the presumption of innocence by the incomplete instruction on reasonable doubt.

    VIII.    Defendant must be re-sentenced where offense variable 14 was inaccurately scored and Defendant was denied his right to a jury determination that he was the leader in a multiple-offender situation.

Respondent argues in an answer to the habeas petition that claims I, IV, V, and VI are not cognizable on habeas review, that claim II fails to assert a federal constitutional violation, and that claims III, VII, and VIII lack merit.

## II. Standard of Review

Petitioner is entitled to the writ of habeas corpus only if the state court's adjudication of his claims on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

## III. Discussion

### A. Evidence of a Prior Conviction

The first habeas claim alleges that Petitioner was denied a fair trial when the prosecutor asked Chief of Police William Hines of the Erie Township Police Department whether Petitioner had told Chief Hines that he did not want to go back to prison. Chief Hines responded to the prosecutor's question with a simple, "Yes." (Tr. Aug. 25, 2003, at 257.) Defense counsel objected to the question and answer in the jury's absence and also moved for a mistrial. The trial court denied the motion for a mistrial, but offered to instruct the jury not to consider the evidence. Defense counsel declined the offer of a cautionary instruction because he thought it would be more harmful than helpful. (*Id.* at 257-65; Tr. Aug. 26, 2003, at 3-14.)

Petitioner maintains that evidence of his prior conviction was prejudicial propensity evidence and the result of prosecutorial misconduct. He claims that there was no relevance or probative value to the evidence and that the evidence likely persuaded the jury to believe he was

5

guilty of the charged crimes because he had been convicted of another crime in the past.

The Michigan Court of Appeals reviewed Petitioner's claim on the merits and concluded that the prosecutor's question was proper and that the trial court did not abuse its discretion in denying Petitioner's motion for a mistrial. The court of appeals stated that the isolated reference to Petitioner's prior imprisonment did not result in harmful prejudice to Petitioner or to his character.

Petitioner's challenge to testimony regarding his prior conviction lacks merit because

> [t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence . . . . While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S. Ct. 1496, 99 L. Ed. 2d 771 (1988), it has not explicitly addressed the issue in constitutional terms.

*Bugh v. Mitchell*, 329 F.3d 496, 512-13 (6th Cir. 2003); *see also Bey v. Bagley*, 500 F.3d 514, 519-23 (6th Cir. 2007), *cert. denied*, __ U.S. __, 128 S. Ct. 1704 (2008). Because there is no Supreme Court decision barring the use of propensity evidence on constitutional grounds, the state court's decision that the evidence was admissible cannot be contrary to Supreme Court precedent.

To prevail on his claim of prosecutorial misconduct, Petitioner must demonstrate that the prosecutor infringed on a specific constitutional right or infected his trial with such unfairness as to make the resulting conviction a denial of due process. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The complained-of conduct must be both improper and flagrant, *Broom v. Mitchell*, 441 F.3d 392, 412 (6th Cir. 2006), *cert. denied*, 549 U.S. 1255 (2007), and "so egregious . . . as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602

F.2d 117, 119 (6th Cir. 1979).  When determining whether a prosecutor's comments were flagrant, courts must consider "(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused." *United States v. Carroll*, 26 F.3d 1380, 1385 (6th Cir. 1994).

The mention of a defendant's prior conviction can be prejudicial.  *See Serra v. Mich. Dep't. of Corr.*, 4 F.3d 1348, 1356 (6th Cir. 1993).  In this case, however, the reference to Petitioner's prior incarceration was an isolated incident in the trial.  The prosecutor did not use the evidence to argue that Petitioner committed the charged crimes.  In fact, no other mention was made of Petitioner's prior conviction, and the jury was not told the nature of the prior conviction.  Although the prosecutor's conduct was deliberate, the strength of the evidence against Petitioner was strong, if not overwhelming.  Therefore, eliciting testimony about Petitioner's prior conviction did not amount to flagrant misconduct such that it rendered the entire trial so unfair as to make the resulting conviction a denial of due process.

**B.  Denial of Funds for an Investigator**

Petitioner alleges that the trial court should have granted his request for funding to hire an investigator for the purpose of locating people associated with the house in Toledo where Ms. Grodi's safe was found.  Petitioner claims that Danette Salazar and others associated with the house would have shed light on the appearance of the safe and provided crucial information about his lack of involvement in the crimes.  Petitioner states that he was indigent and that the lack of an investigator made him overly reliant on information provided by the prosecution and foreclosed any opportunity to locate unbiased witnesses.

The Michigan Court of Appeals deemed this issue waived on appeal because Petitioner did not provide the trial court with information regarding the cost of an investigator. The court of appeals also stated that the lack of an investigator did not deprive Petitioner of due process.

This Court finds no merit in Petitioner's claim because he has pointed to no Supreme Court decision holding that a criminal defendant has a constitutional right to appointment of an investigator. In *Caldwell v. Mississippi*, 472 U.S. 320, 323 n. 1 (1985), the Supreme Court declined to decide that issue and "made it clear that there is no constitutional right to the appointment of an investigator where the defendant offers 'little more than undeveloped assertions that the requested assistance would be beneficial.'" *Riley v. Taylor*, 277 F.3d 261, 307 (3d Cir. 2001) (quoting *Caldwell*, 472 U.S. at 323 n.1). Because "[t]here is no federal . . . constitutional right to the assistance of an investigator," *Royal v. Netherland*, 4 F. Supp.2d 540, 558 (E.D. Va. 1998), and because Petitioner has offered little more than undeveloped assertions that the required assistance would have been beneficial, his claim lacks merit.

### C. *Miranda*

Chief of Police William Hines of the Erie Township Police Department brought Petitioner from Ohio to Michigan after Petitioner waived extradition. During that process, Petitioner asked Chief Hines "what this was all about." Chief Hines responded to Petitioner's inquiry by explaining the charges to Petitioner. Petitioner then stated that he had nothing to do with the offense, but that he knew who did. Chief Hines subsequently read Petitioner's constitutional rights to him, and Petitioner proceeded to make other comments about the crimes.

Petitioner claims that Chief Hines should have advised him of his constitutional rights before conversing with him and should have refrained from questioning him without an attorney

8

present. He contends that his statement to Hines was inadmissible because his rights to remain silent and to have an attorney present were violated. The Michigan Court of Appeals opined that Petitioner was not entitled to suppression of his statement because his comments appeared to be voluntarily made, the police did not prompt his first statement about the crime, and he was provided with full *Miranda* warnings before he made any additional comments.

      The Fifth Amendment to the United States Constitution provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. The Supreme Court explained in *Miranda v. Arizona*, 384 U.S. 436, 444 (1966), that, to protect this right, an accused person must be warned prior to custodial interrogation "that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." If the accused indicates at any stage of the process that he wants to consult an attorney or does not wish to be interrogated, the police may not question him. *Id*. at 444-45.

      The Supreme Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id*. at 444. Interrogation also refers to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). "Briefly reciting to a suspect in custody the basis for holding him, without more, cannot be the functional equivalent of interrogation." *Enoch v. Gramley*, 70 F.3d 1490, 1500 (7th Cir. 1995); *see also Easley v. Frey*, 433 F.3d 969, 971-74 (7th Cir. 2006) (explaining that advising a suspect of the evidence against

9

him and the potential punishment he faced did not constitute interrogation).

The record in this case indicates that, when Chief William Hines and Police Officer William Rollins went to pick up Petitioner at the Lucas County Jail in Toledo, Ohio, Petitioner wanted to know "what this was all about." Hines responded by informing Petitioner of the charges against him. Petitioner then stated that he had nothing to do with the crimes, but he knew who did and that he wanted to help himself by making a statement, because he had children and did not want to go back to prison. Hines then advised Petitioner of his constitutional rights. Petitioner subsequently informed Hines that James Connors and Ricky Rodriguez committed the crimes, that the safe was transported to 652 Sylvania Avenue in Mr. Rodriguez's truck, and that Petitioner's fingerprints would be on the safe and on the victim's documents because he had attempted to clean up the residence. Petitioner appeared to understand his constitutional rights when they were read to him, and he did not request an attorney. (Tr. Mar. 19, 2003, at 18-20, 44-45; 59-65.)

The facts, as summarized above, indicate that Petitioner initiated the conversation with Chief Hines and volunteered the statement that he had nothing to do with the crimes. The statement did not violate *Miranda*, because it was not obtained through interrogation. *United States v. McConer*, 530 F.3d 484, 495 (6th Cir. 2008). It was a volunteered statement, and "[v]olunteered statements of any kind are not barred by the Fifth Amendment." *Miranda*, 384 U.S. at 478. Petitioner's subsequent comments were admissible because they were made after he was advised of, and waived, his constitutional rights and because there is no evidence that his statements were the result of any compelling influence or were not freely and voluntarily made. The Court concludes that Petitioner was not deprived of his constitutional right to remain silent

or his right to have an attorney present during questioning.

### D. The Search of Petitioner's Home

Petitioner alleges that the search of his residence and the seizure of incriminating evidence were unconstitutional because the police lacked a search warrant, and no exception to the warrant requirement existed. According to Petitioner, the person who consented to the search (Gregory Herfurt) did not live at the house, nor own the house, and the seized items were not in plain view. In addition, alleges Petitioner, Herfurt's consent to search was involuntary because the police threatened him and he was motivated by an award for information about the crimes.

When "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 482 (1976). For a "full and fair" opportunity to have existed, the state must have provided a mechanism for raising the claim and presentation of the claim must not have been frustrated by a failure of that mechanism. *Gilbert v. Parke*, 763 F.2d 821, 823 (1985) (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

In Michigan, the mechanism for challenging the constitutionality of a search and seizure is to file a motion to suppress the disputed evidence before or during trial. *People v. Ferguson*, 376 Mich. 90, 93-95; 135 N.W.2d 357, 358-59 (1965). Petitioner moved to suppress physical evidence obtained by the police during a search of his residence. The trial court held an evidentiary hearing on his motion to suppress evidence and denied the motion after determining

that, although the police lacked a search warrant, Gregory Herfurt had real and apparent authority to grant consent to search the house.

The Michigan Court of Appeals also reviewed Petitioner's claim on the merits. It determined that consent to search was validly and voluntarily given and that it was not the product of duress or coercion. The court of appeals ruled that the trial court properly denied Petitioner's motion to suppress physical evidence.

Petitioner had a full and fair opportunity for presentation of his issue in state court, and there was no failure of the mechanism for raising his claim. Therefore, this Court is not required to address the substantive merits of Petitioner's Fourth Amendment claim.

### E.  Denial of the Motion to Quash the Charges

Petitioner alleges that the trial court erroneously denied his motion to quash the charges against him. Although he concedes that there was probable cause to believe the crimes were committed, he maintains that the evidence at the preliminary examination was insufficient to establish that he committed the charged crimes. The Michigan Court of Appeals disagreed and stated that the evidence was sufficient to establish that Petitioner committed the crimes.

There is no constitutional right to a preliminary examination, *Dillard v. Bomar*, 342 F.2d 789, 790 (6th Cir.1965), and a conviction cannot be vacated on the ground that the defendant was detained pending trial without a proper determination of probable cause. *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975); *United States v. Saussy*, 802 F.2d 849, 852 (6th Cir. 1986) (citing *United States v. Millican*, 600 F.2d 273, 277-78 (5th Cir. 1979)). In fact, the contention that the state court erred in binding Petitioner over for trial for lack of sufficient evidence at the preliminary examination "is a state-law issue that does not implicate a federal constitutional

12

right, and is therefore not subject to review in a habeas proceeding." *Shacks v. Tessmer*, 9 Fed. Appx. 344, 351 (6th Cir. 2001) (unpublished opinion citing *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991)). Consequently, Petitioner is not entitled to relief on the basis that the trial court denied his motion to quash the charges.

### F. Failure to Produce a Witness

Petitioner alleges next that the prosecutor failed to exercise due diligence to produce Danette Salazar, an endorsed witness, and that the trial court deprived him of a fair trial by denying his request for an adverse-witness instruction regarding Salazar. Petitioner has not supported this claim with any federal decisions; his claim is raised solely as an issue of state law. "A federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984), and the argument that the prosecutor violated the statute on the production of a *res gestae* witness, *see* Mich. Comp. Laws § 767.40a, is not cognizable on habeas review. *Johnson v. Hofbauer*, 159 F. Supp.2d 582, 601 (E.D. Mich. 2001).

Furthermore, under state law, due diligence entails doing "everything reasonable, not everything possible, to obtain the presence of *res gestae* witnesses." *People v. George*, 130 Mich. App. 174, 178; 342 N.W.2d 908, 910 (1983). "The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, and not whether more stringent efforts would have produced it." *People v. Bean*, 457 Mich. 677, 684; 580 N.W.2d 390, 393 (1998). "If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *People v. Eccles*, 260 Mich. App. 379, 388; 677 N.W.2d 76, 83 (2004).

The Michigan Court of Appeals accurately summarized the prosecution's efforts in this case as follows:

> The Erie Township Police attempted to serve Salazar both in person at 652 Sylvania Avenue and by mail. They also contacted Ohio authorities about her location, checked to determine if she was in jail, checked her last known employment at a strip club business, checked other strip club businesses to ascertain if she was employed, checked Toledo police records for alternative addresses, and twice tried to locate her at an address in a trailer park in Erie Township. Chief [of Police William] Hines spoke with the occupants of the trailer. Neither the police nor the prosecutor could locate Salazar to secure her attendance at trial.

*Holbrooke*, Mich. Ct. App. No. 256368, at 6. The trial court determined that Salazar could not be located, despite the exercise of due diligence, and the Michigan Court of Appeals concluded that "the trial court did not abuse its discretion in its finding of due diligence and refusal to give an adverse witness instruction." *Id*.

The record supports the state courts' conclusions that the prosecutor exercised due diligence in producing Danette Salazar, and that is all state law requires. *See Eccles*, 260 Mich. App at 388; 677 N.W.2d at 83. Because the prosecutor complied with the statute, the trial court was not required to read the adverse-witness jury instruction.

Furthermore, Petitioner has not demonstrating that Salazar's testimony would have benefitted him. Salazar was listed as the prosecutor's witness, and James Connors testified that, on the day of the crimes, Salazar gave him and Petitioner the keys to Gregory Herfurt's car, knowing that the men intended to steal money. (Tr. Aug. 25, 2003, at 184.) Thus, even if the Court were to construe Petitioner's claim as a federal constitutional issue, his arguments are unpersuasive.

**G.  The Jury Instruction on Reasonable Doubt**

Petitioner alleges that he was denied his right to due process, to a properly instructed jury, and to be presumed innocent by the trial court's instruction on reasonable doubt. The disputed jury instruction reads:

> [A] reasonable doubt is a fair, honest doubt, growing out of the evidence or lack of evidence. It is not merely an imaginary or possible doubt, but it is a doubt based on reason and common sense. A reasonable doubt then, is just that. A doubt that is reasonable after a careful and considered examination of the facts and circumstances of this case.

(Tr. Aug. 26, 2003, at 119.)   Petitioner claims that this instruction was circular and provided the jury with an incomplete explanation of the law. The Michigan Court of Appeals, however, found no error in the trial court's use of the standard jury instructions on the presumption of innocence, reasonable doubt, and the burden of proof.

On habeas review, it is not enough to show that the jury instructions were incorrect under state law, *McGuire*, 502 U.S. at 71-72, and undesirable, erroneous, or even universally condemned, *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Instead, to warrant habeas relief, the instruction must have violated some right guaranteed to the defendant by the Fourteenth Amendment, *Naughten*, 414 U.S. at 146, or the instructions, as a whole, must have rendered the entire trial fundamentally unfair. *Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000).

In *Binder v. Stegall,* 198 F.3d 177 (6th Cir. 1999), the United States Court of Appeals upheld the constitutionality of the jury instruction in dispute here. The Sixth Circuit stated that

> the Supreme Court does not require any particular form of words be used in advising the jury about the government's burden of proof. *Victor v. Nebraska*, 511 U.S. 1, 21, 114 S. Ct. 1239, 127 L. Ed.2d 583 (1994). There are no magic words that must be included or omitted. The Due Process Clause requires only that the instruction not lead the jury to convict on a lesser showing than "reasonable doubt" and, when taken as a whole, adequately conveys the "concept" of reasonable doubt. The circularity and possible ambiguity does not render the instruction constitutionally infirm.

*Id*. at 179 (citing *Szenay v. Yukins*, No. 98-1138, 1999 WL 187482 at *6 (6th Cir. Mar.10, 1999) (unpublished)). The Sixth Circuit concluded in *Binder* that

> the standard instruction does not suggest to the jury a lowering of the government's burden of proof. Taken as a whole the instruction informed the jury that it could convict only if the prosecution established guilt beyond a reasonable doubt and that the decision had to be based on a careful examination of the evidence.

*Id*. For the reasons given in *Binder*, Petitioner is not entitled to habeas corpus relief on the basis of his claim about the jury instructions.

### H. The Sentence

The eighth and final claim challenges the scoring of offense variable 14 of the Michigan sentencing guidelines. Offense variable 14 measures the offender's role in a crime. *See* Mich. Comp. Laws § 777.44. Petitioner was given ten points for being a leader in a multiple offender situation. *See* Mich. Comp. Laws § 777.44(1)(a). He claims that he should not have received any points for offense variable 14 because he and James Connors were equally involved in the incident and equally culpable for the crime. Furthermore, according to Petitioner, the determination of whether he was the leader in a multiple-offender situation should have been made by the jury, pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004). Finally, Petitioner alleges that the trial court relied on inaccurate information in violation of his right to due process. The Michigan Court of Appeals stated on review of these arguments that *Blakely* is inapplicable to Michigan's indeterminate sentencing system and that the facts were sufficient to show Petitioner was a leader in a multiple offender situation.

The state court's interpretation and application of state sentencing guidelines is a matter of state concern only, *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003), and "federal

habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Thus, Petitioner's challenge to the scoring of the state sentencing guidelines fails to state a claim for habeas corpus relief. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Whitfield v. Martin*, 157 F. Supp. 2d 758, 762 (E.D. Mich. 2001). Although Petitioner purports to allege a federal constitutional claim, his Sixth Amendment claim under *Blakely* has no merit because "*Blakely* does not apply to Michigan's indeterminate sentencing scheme." *Tironi v. Birkett*, 252 Fed. Appx. 724, 725 (6th Cir. 2007) (unpublished opinion), *cert. denied*, __ U.S. __, 128 S. Ct. 1898 (2008).

Petitioner's due process claim also lacks merit. A trial court may not rely on "misinformation of constitutional magnitude" at sentencing, *Roberts v. United States*, 445 U.S. 552, 556 (1980) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)), or on "extensively and materially false" information, which the defendant had no opportunity to correct, *Townsend v. Burke*, 334 U.S. 736, 741 (1948). The record, however, indicates that Petitioner

> suggested that he and Connors go to Michigan to steal tools. Although Connors drove, Connors claimed that [Petitioner] told him which exit to take from the expressway, that [Petitioner] entered the victim's house while Connors waited outside, and that [Petitioner] located the safe and other items, which were ultimately taken. [Petitioner] also set the fire before leaving the house. Connors and [Petitioner] subsequently spoke to [Ricky] Rodriquez because [Petitioner] knew Rodriquez had tools to break open the safe. [Petitioner] told Rodriquez to bring the tools to 652 Sylvania Avenue. [Petitioner] and Rodriquez broke open the safe, and [Petitioner] hid the victim's papers in a bag in the drop ceiling of the kitchen.

*Holbrooke*, Mich. Ct. App. No. 256368, at 7.

These facts, which are supported by the record, were sufficient to show that Petitioner was a leader in a multi-offender situation. Therefore, the trial court did not rely on materially false information, nor deprive Petitioner of due process when it scored ten points for offense

variable 14.

**IV. Conclusion**

The state appellate court's adjudication of Petitioner's claims on the merits did not result in an unreasonable determination of the facts or in a decision that was contrary to, or unreasonable application of, clearly established federal law, as determined by the Supreme Court. Accordingly, the habeas corpus petition [Dkt. #1, Jan. 8, 2007] is **DENIED**. The Court declines to issue a certificate of appealability because reasonable jurists would not disagree with the Court's resolution of Petitioner's claims, and the claims do not warrant encouragement to proceed further. *Banks v. Dretke*, 540 U.S. 668, 674 (2004). Petitioner nevertheless may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

                                                          s/Gerald E. Rosen
                                                          GERALD E. ROSEN
                                                          CHIEF UNITED STATES DISTRICT JUDGE

Dated:         June 10, 2009

**CERTIFICATE OF SERVICE**

I hereby certify that on ____June 10, 2009____, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: _____Debra M. Gagliardi_____, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants:
 Michael Holbrooke, #469478, Michigan Reformatory,1342 West Main Street, Ionia, MI 48846 .

                                                  s/Ruth A. Brissaud
                                                Ruth A. Brissaud, Case Manager
                                                (313) 234-5137